**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **CODY BROWN** | **CIVIL ACTION** |
| **VERSUS** | **NO.   21-1514** |
| **DARREL VANNOY, WARDEN** | **SECTION:   "J"(5)** |

## REPORT AND RECOMMENDATION

This matter was referred to the undersigned United States Magistrate Judge to conduct a hearing, including an evidentiary hearing, if necessary, and to submit proposed findings and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and (C), and as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases in the United States District Courts.    Upon review of the entire record, the Court has determined that this matter can be disposed of without an evidentiary hearing.    *See* 28 U.S.C. § 2254(e)(2). For the following reasons, **IT IS RECOMMENDED** that the petition for habeas corpus relief be **DISMISSED WITH PREJUDICE**.

### Procedural History

Petitioner, Cody Brown, is a state prisoner incarcerated at the Louisiana State Penitentiary in Angola, Louisiana.    In February 2015, he was charged by bill of information with one count of possession with intent to distribute heroin and one count of possession with intent to distribute cocaine.[1]    On September 1, 2015, after a one-day jury trial, he was

---

[1]  State Rec., Vol. 1 of 20, Bill of Information, Parish of Jefferson (Case No. 15-617). He was charged separately with possession of marijuana and found guilty by the trial judge; that conviction is not at issue.    State Rec., Vol. 2 of 20, Trial Transcript, R.p. 286.    The record page cites used in this report refer to the State's superimposed page-numbering at

found guilty as charged on both counts.[2]    On September 4, 2015, the trial court denied his motion for post-verdict judgment of acquittal and new trial and sentenced him to 30 years' imprisonment on each count, with 10 years of the sentence on count one, and two years of the sentence on count two, to be served without the benefit of parole, probation or suspension of sentence.[3]    His motion to reconsider the sentence was denied.

On September 17, 2015, he filed another motion for new trial based upon newly discovered evidence.[4]    The motion was set for hearing.    However, that same date, he also filed a motion for appeal.[5]    The State filed a multiple bill of information.    On October 29, 2015, Brown, acting *pro se*, filed an amendment to the pending motion for new trial.    On November 10, 2015, the trial court denied the request to amend the new-trial motion because the pending appeal divested the trial court of jurisdiction.[6]    On February 25, 2016, the trial court held a multiple-bill hearing and adjudicated Brown as a second-felony offender.    On February 29, 2016, the trial court vacated his sentence on count one (heroin) and sentenced him as a second-felony offender to fifty years' imprisonment to be served

---

the bottom right corner of each page.

[2]    State Rec., Vol. 1 of 20, Trial Minute Entry, 9/1/2015.

[3]    State Rec., Vol. 1 of 20, Minute Entry, 9/4/2015.

[4]    State Rec., Vol. 1 of 20, Motion for New Trial Based on Newly Discovered Evidence, R.p. 81.

[5]    State Rec., Vol. 1 of 20, Motion for Appeal, R.p. 84.

[6]    State Rec., Vol. 1 of 20, Order denying Amendment/Supplement to Motion for New Trial, R.p. 97.

without benefit of probation or suspension of sentence.[7]    Brown was granted an appeal.

Brown asserted two assignments of error on appeal: (1) the trial court erred in admitting "other crimes" evidence and (2) the trial court erred in adjudicating him a second-felony offender.    The Louisiana Fifth Circuit Court of Appeal remanded the matter to the trial court for a hearing on Brown's original and supplemental motions for new trial and reserved his right to appeal the convictions and sentences, including the multiple-offender adjudication, upon an adverse ruling on the motions for new trial.[8]

On April 6, 2017, a hearing was held on Brown's motion for new trial.[9]    The trial court denied the motion.    On May 18, 2017, a motion to reconsider the sentences was denied.[10]    Brown was granted a second appeal.

On appeal, he asserted the same two assignments of error as in the first appeal: (1) the trial court erred in admitting "other crimes" evidence and (2) the trial court erred in adjudicating him a second-felony offender.    On December 20, 2017, the Louisiana Fifth Circuit Court of Appeal affirmed his convictions and sentences.[11]    On November 5, 2018,

---

[7]   State Rec., Vol. 1 of 20, Multiple Bill of Information, R.p. 85; Judgment and Reasons rendered at multiple bill hearing, R.p. 108; Multiple Offender Sentencing Minute Entry, 2/29/2016, R.p. 110; State Rec., Vol. 2 of 20, Transcript of Hearings (February 25, 2016 and February 29, 2016).

[8]   *State v. Brown*, 16-KA-143 (La. App. 5 Cir. 10/26/16), 202 So.3d 1203; State Rec., Vol. 12 of 20.

[9]   State Rec., Vol. 2 of 20, Transcript of hearing on motion for new trial (April 6, 2017), R.p. 428.

[10]   State Rec., Vol. 2 of 20, Transcript of motion to reconsider (May 18, 2017), R.p. 437.

[11]   *State v. Brown*, 17-KA-348 (La. App. 5 Cir. 12/20/17), 235 So.3d 1314; State Rec.,

the Louisiana Supreme Court denied his application for writ of certiorari.[12]    On May 13,

2019, his petition for writ of certiorari to the United States Supreme Court was denied.[13]

On or about October 23, 2019, Brown submitted an application for post-conviction

relief to the state district court.[14]    In that application, he raised two grounds for relief:    (1)

he was denied effective assistance of trial counsel for (a) failing to investigate and obtain a

property inventory sheet to refute the State's "other crimes" evidence; (b) agreeing to leave

the courtroom while the trial judge questioned jurors about a search warrant introduced for

record purposes only; and (c) failing to request a jury instruction on "other crimes" evidence;

and (2) he was denied the right to a public trial and fair trial when the trial court cleared the

courtroom to question jurors individually about evidence submitted for record purposes

only that jurors inadvertently viewed.    On March 2, 2020, the state district court denied the

ineffective-assistance claims on the merits and procedurally barred the remaining claim for

relief that was not raised on appeal.[15]    On April 23, 2020, the Louisiana Fifth Circuit denied

---

Vol. 13 of 20.    A motion to reconsider sentence, filed on his behalf by counsel on July 31,
2018, while the Louisiana Supreme Court writ application was pending, was denied on
September 12, 2018. State Rec., Vol. 5 of 20, Order, R.p. 1025.

[12] *State v. Brown*, 2018-KO-0158 (La. 2018), 256 So.3d 276; State Rec., Vol. 13 of 20.

[13] *Brown v. Louisiana*, 139 S.Ct. 2033, 204 L.Ed.2d 233 (2019); State Rec., Vol. 13 of
20.

[14] State Rec., Vol. 5 of 20, Application for Post-Conviction Relief and Memorandum in
Support, R.p. 1060.

[15] State Rec., Vol. 8 of 20, R.p. 1836, State District Court PCR Order, March 2, 2020. A
traverse filed by Brown after the state district court had issued an order denying the claims
was ruled moot.    State Rec., Vol. 8 of 20, R.p. 1875.    A second application for post-
conviction relief was later filed by counsel asserting a claim under *Ramos* involving the jury

his supervisory writ application.[16]     On January 20, 2021, the Louisiana Supreme Court denied relief because he failed to show he received ineffective assistance of counsel under the standard of *Strickland v. Washington*, 466 U.S. 668 (1984), and his remaining claim was procedurally barred.[17]

On July 30, 2021, Brown submitted this federal application for habeas corpus relief.[18] As grounds for relief, he urges the same claims from his state court applications for post-conviction relief:     (1) ineffective assistance of trial counsel and (2) the denial of a public and fair trial.     The State concedes that the federal petition was timely filed and the claims have been exhausted in the state courts.[19]     In its response, the State argues that Brown's claim for denial of a public trial should be dismissed as procedurally defaulted and the remaining claims of ineffective assistance of counsel should be denied on the merits. Brown has filed a reply to the State's response.[20]

---

verdict; however, relief was denied and those filings are not relevant to these federal proceedings.     State Rec., Vol. 8 of 20, R.p. 1942, State District Court Order denying relief, May 3, 2021.

[16]   *Brown v. Vannoy*, 20-KH-123 (La. App. 5 Cir. April 23, 2020), State Rec., Vol. 8 of 20, R.p. 1860.

[17]   *Brown v. Vannoy*, 2020-KH-00669 (La. 01/20/21), 308 So.3d 1158; State Rec., Vol. 8 of 20.

[18]   Rec. Docs. 1, 3, Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus.

[19]   Rec. Doc. 16, State's Response, pp. 8, 11.

[20]   Rec. Doc. 17, Traverse.

**Facts**

On direct appeal, the Louisiana Fifth Circuit Court of Appeal summarized the facts

adduced at trial:

This case arises from an arrest which occurred on the afternoon of December 5, 2014. That afternoon defendant was a passenger in a car driven by Shawn Broussard which Kenner Police stopped for excessive window tint. The Kenner Police Department ran a criminal history inquiry on defendant which revealed an outstanding attachment for defendant's arrest in Orleans Parish. The Kenner Police Department arrested defendant on the Orleans Parish attachment. After defendant was transported to the Kenner Police Department, he was found to be in possession of distributable amounts of heroin and cocaine along with marijuana. During the September 1, 2015 trial, the State called Detectives David Schlueter and Kevin Treigle, Officer Francisco Alvarenga, Computer Forensics Examiner Edward Rohde, and Forensic Drug Analyst Brian Schulz as witnesses.

Narcotics Detectives Kevin Treigle and David Schlueter of the Kenner Police Department testified that on December 5, 2014 they were on a proactive patrol in an area with high criminal drug activity. Detective Treigle explained that he had been a member of the Federal Drug Enforcement Administration High Intensity Drug Trafficking Area Task Force since 2010 and as such he is commissioned by the Drug Enforcement Administration to make federal drug arrests.

Former Detective Schlueter had been a Narcotics Detective for the Kenner Police Department between 2010 and April of 2015. Detective Schlueter testified that during his time with Kenner Police, he conducted regular drug patrols, and made many drug related arrests.

While on patrol on December 5, 2014, Detectives Treigle and Schlueter noticed a Nissan Altima with a windshield tint exceeding the legal maximum of six inches. At trial, Detective Treigle testified that he stopped the car and approached the driver, Shawn Broussard, and informed him that he was being pulled over for excessive window tint. Detective Treigle testified that as he was speaking to Broussard, he noticed Broussard was nervous. Therefore, Detective Treigle scanned the interior of the car and observed two bottles of Mannitol in a brown paper bag on the backseat. The presence of Mannitol roused Detective Treigle's suspicion as Mannitol itself is not illegal, but is frequently used as a cutting agent added to cocaine or heroin to increase the

drug's volume and profit margin.

Detective Schlueter testified that as Detective Treigle pulled behind Broussard's car, activated the emergency lights and sirens, and pulled the vehicle over, he observed the front seat passenger—the defendant—"moving frantically in his seat like as if he was trying to either reach for something, conceal something." Detective Schlueter exited the car and approached the vehicle from the passenger side. The passenger identified himself to detective Schlueter as Cody Brown. During their exchange, Detective Schlueter testified that defendant was extremely nervous, did not make eye contact with him, and his pulse was visible on his neck. After their exchange, Detective Schlueter returned to the patrol car, and contacted Kenner Police Headquarters to run a criminal history inquiry on Cody Brown. The inquiry revealed defendant had an open attachment in Orleans Parish. Detective Schlueter testified he returned to Broussard's car, placed defendant's hands in handcuffs, advised defendant of his rights and arrested defendant. Detective Schlueter testified he notified Detective Treigle of defendant's outstanding attachment, and Detective Treigle told Detective Schlueter about the Mannitol in the backseat.

Detective Schlueter testified that after he advised defendant of his rights, he asked about the Mannitol in the back seat. Defendant responded to Detective Schlueter that he had purchased the Mannitol at a music store in Kenner.

After the arrest, Detective Schlueter testified he conducted a post-arrest search of defendant's pockets, waistband, arms and legs to find firearms or contraband. Pursuant his search of defendant, Detective Schlueter found $1211.00 and four cell phones. Detective Schlueter testified that using multiple phones is a common tactic among drug traffickers as it aids in evading the police's attempts to pinpoint their location. After the search, Detective Schlueter contacted the Kenner Police Department for a patrol unit to transport defendant to the Kenner Police Department. After defendant was transported to the Kenner Police Department, Detective Schlueter testified he issued Broussard a citation for the illegal window tint.

Officer Francisco Alvarenga testified that he transported defendant to the Kenner Police Department. When Officer Alvarenga arrived on the scene, defendant was already in handcuffs. Officer Alvarenga testified that upon arrival at the Kenner lock-up, as he opened the door to let defendant out of the patrol car, he noticed a plastic bag protruding from defendant's clenched hands. Officer Alvarenga asked defendant to drop the bag, and defendant complied. Officer Alvarenga testified that the plastic bag contained three additional plastic bags. At that point, Officer Alvarenga contacted Detectives

Treigle and Schlueter regarding defendant's suspected narcotics possession.

Detectives Schlueter and Treigle returned to the Kenner Police Department. Upon arrival, Schlueter testified Officer Alvarenga gave him a plastic bag containing three plastic bags, the contents Detective Schlueter believed were consistent with the physical characteristics of heroin, cocaine, and marijuana. Detective Schlueter performed a field test on the contents of the bags, and one powder tested positive for the presence of heroin, one powder tested positive for the presence of cocaine, and the green vegetable matter tested positive as marijuana.

Brian Schulz, a Jefferson Parish Crime Lab forensic drug analyst testified without objection as an expert in drug identification. Mr. Schulz testified that he tested the material contained in the three bags seized from defendant. The evidence recovered from defendant consisted of 6 grams of heroin, 12 grams of cocaine and 2 grams of marijuana.

Detective Schlueter testified that 6.2 grams of heroin would equal approximately 62 street dosage units and would be worth about $1200.00. He further testified that 11.2 grams of cocaine would also be worth about $1200.00 after distribution. Detective Treigle testified that in his experience, the quantity of heroin and cocaine seized from defendant exceeds the amount retained for personal use and is of an amount consistent with distribution.

Upon his arrival at the Kenner Police Department, as he was writing defendant's arrest report, Detective Schlueter noticed one of defendant's four cell phones—a Samsung Galaxy S4—was "continually ringing, ringing, ringing, receiving some text messages ..." Detective Schlueter testified he believed the constant ringing was consistent with drug trafficking. Therefore, he prepared and executed an affidavit for a search warrant for a search of that cell phone. The warrant was signed by a Criminal Commissioner at the Twenty–Fourth District Court.

Sergeant Edward Rohde, a computer forensics examiner, executed the search warrant on the Samsung Galaxy S4. Rohde testified that he performed a "cellphone dump" on the phone, which downloads all the data—including call histories, photos, videos and text messages—from the phone and loads them onto a CD, and delivered the CD to the detectives.

At trial, the State presented text messages, photos and videos that Detective Schlueter testified were consistent with the distribution of drugs. The State admitted three photographs depicting large amounts of money and firearms

and two videos—one depicting a large amount of money floating in a bathtub full of water and the second showing defendant weighing and packaging a brown powdered substance. The State also presented text messages from defendant's phone time stamped from about an hour before his arrest. In one exchange the caller asked whether defendant was "going to have the dark stuff?" Detective Schlueter testified "dark stuff" is language used to describe heroin.[21]

### Standards of Review on the Merits

Title 28 U.S.C. § 2254(d)(1) and (2), as amended by The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), provides the applicable standards of review for pure questions of fact, pure questions of law, and mixed questions of both.    A state court's purely factual determinations are presumed to be correct and a federal court will give deference to the state court's decision unless it "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."    28 U.S.C. § 2254(d)(2); *see also* 28 U.S.C. § 2254(e)(1) ("In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.").    With respect to a state court's determination of pure questions of law or mixed questions of law and fact, a federal court must defer to the decision on the merits of such a claim unless that decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."    28 U.S.C. § 2254(d)(1).

---

[21]    *State v. Brown*, 235 So.3d at 1319-21.

The "'contrary to' and 'unreasonable application' clauses [of § 2254(d)(1)] have independent meaning." *Bell v. Cone*, 535 U.S. 685, 694 (2002).    A state court decision is "contrary to" clearly established precedent if the state court applies a rule that contradicts the governing law set forth in the United States Supreme Court's cases or if the state court confronts a set of facts that are materially indistinguishable from a decision of the United States Supreme Court and nevertheless arrives at a result different from United States Supreme Court precedent.    *Williams v. Taylor*, 529 U.S. 362, 405–06 (2000); *Wooten v. Thaler*, 598 F.3d 215, 218 (5th Cir.), *cert. denied*, 131 S.Ct. 294 (2010).    An "unreasonable application" of [United States Supreme Court] precedent occurs when a state court "identifies the correct governing legal rule... but unreasonably applies it to the facts of the particular state prisoner's case."    *Williams*, 529 U.S. at 407-08; *White v. Woodall*, 572 U.S. 415, 426 (2014).

It is well-established that "an unreasonable application is different from an incorrect one."    *Bell*, 535 U.S. at 694.    A state court's merely incorrect application of Supreme Court precedent simply does not warrant habeas relief.    *Puckett v. Epps*, 641 F.3d 657, 663 (5th Cir. 2011) ("Importantly, 'unreasonable' is not the same as 'erroneous' or 'incorrect'; an incorrect application of the law by a state court will nonetheless be affirmed if it is not simultaneously unreasonable."). "[E]ven a strong case for relief does not mean the state court's contrary conclusion was unreasonable" under the AEDPA.    *Harrington v. Richter*, 562 U.S. 86, 102 (2011).    Section 2254(d) preserves authority to issue the writ in cases where there is "*no possibility* fairminded jurists could disagree that the state court's decision

conflicts with [United States Supreme Court] precedents."    *Id.* (emphasis added); *see also Renico v. Lett*, 559 U.S. 766, 779 (2010) ("AEDPA prevents defendants—and federal courts—from using federal habeas corpus review as a vehicle to second-guess the reasonable decisions of state courts.").

## Analysis

A. *Public and Fair Trial*

Brown claims that he was denied his right to a public trial and a fair trial when pursuant to a joint request by the defense and prosecution the trial judge, in private, questioned each juror individually about a search warrant exhibit that was inadvertently given to jurors even though entered solely for record purposes rather than for publication.[22] This claim for relief was raised in Brown's state-court application for post-conviction relief. The state courts unanimously rejected the claim as procedurally barred under Louisiana Code of Criminal Procedure article 930.4, because he inexcusably failed to raise it on direct appeal.    La. Code Crim. Proc. art. 930.4(C) ("If the application alleges a claim which the petitioner raised in the trial court and inexcusably failed to pursue on appeal, the court shall deny relief").[23]

Review of an issue under federal law is not proper if the claim was rejected by a state

---

[22]  Brown raises a distinct and separate claim that trial counsel rendered ineffective assistance because he was not present in the courtroom for the individual juror questioning. That claim is not procedurally barred and will be considered on the merits later in this report and recommendation.

[23]  State Rec., Vol. 8 of 20, State District Court PCR Order, R.p. 1837; Louisiana Fifth Circuit writ denial, R.p. 1865; Louisiana Supreme Court writ denial, R.p. 1884.

court judgment on a state-law ground that is both independent of the federal claim and adequate to support that judgment.    *Cone v. Bell*, 556 U.S. 449, 465 (2009) (citing *Coleman v. Thompson*, 501 U.S. 722, 729 (1991)); *Ramirez v. Stephens*, 641 F. App'x 312, 319 (5th Cir. 2016).    A procedural restriction is "independent" if the state court's judgment "clearly and expressly" indicates that it is independent of federal law and rests solely on a state procedural bar.    *Rhoades v. Davis*, 914 F.3d 357, 372 (5th Cir. 2019); *Rogers v. Mississippi*, 555 F. App'x 407, 408 (5th Cir. 2014).    The state-law ground may be a substantive rule dispositive of the case or a procedural bar to adjudication of the claim on the merits. *Wainwright v. Sykes*, 433 U.S. 72, 81-82 (1977).    To be "adequate," the state procedural rule must be "firmly established and regularly followed" for the majority of similar claims. *Walker v. Martin*, 562 U.S. 307, 316 (2011) (quoting *Beard v. Kindler*, 558 U.S. 53, 60 (2009)); *see also Glover v. Cain*, 128 F.3d 900, 902 (5th Cir. 1997).

The state rule at issue is both independent and adequate.    Here, the state courts clearly and expressly applied state procedural law, Louisiana Code of Criminal Procedure article 930.4 (C), to bar review of this claim.    The state courts declined review based on a state rule of law setting forth procedural requirements for preservation and presentation of claims on state post-conviction review.    The state-law procedural grounds were entirely independent of federal law.    Furthermore, as federal courts continually recognize, the independent state-law bar imposed under article 930.4 (C) is regularly and evenly applied by the state courts in similar cases.    *See*, *e.g.*, *Faciane v. Kent*, No. 20-809, 2020 WL 6489577, at *8 (E.D. La. Oct. 14, 2020), *adopted* 2020 WL 6483112 (E.D. La. Nov. 4, 2020); *Coleman v.*

*Cain*, No. 07-3655, 2014 WL 348541, at *5 (E.D. La. Jan. 31, 2014) (Milazzo, J.) (Article 930.4(B) & (C) are independent and adequate to bar federal habeas review); *Johnson v. Cain*, No. 12-0621, 2012 WL 5363327, at *4 (E.D. La. Oct. 30, 2012) (Lemelle, J.) (Article 930.4(C) is independent and adequate state procedural bar); *Perez v. Cain*, No. 12-1331, 2012 WL 4815611, at *1 (E.D. La. Oct. 10, 2012) (Barbier, J.) (same).

Brown contends the state courts misapplied Louisiana Code of Criminal Procedure article 930.4(C),[24] which bars a claim that the petitioner raised in the trial court, but inexcusably failed to pursue on appeal.    He disputes that the claim was "raised in the trial court," since counsel did not object, but rather volunteered to have Brown's family and friends step outside,[25] and he disputes whether the claim could have been raised on direct appeal if no objection was made in the trial court (*i.e.*, the contemporaneous objection rule for preserving errors for appeal, Louisiana Code of Criminal Procedure article 841(A)). Brown conflates two different state-court procedural bars and attempts to overcome the express bar applied here by the state courts on post-conviction review by relying on a bar that was <u>not</u> applied in this case on direct appeal.    On habeas review, state procedural rules enjoy a presumption of adequacy, and the burden is on the petitioner to demonstrate otherwise.    *Glover*, 128 F.3d at 902; *Hughes v. Johnson*, 191 F.3d 607, 614 (5th Cir. 1999).

---

[24]    Rec. Doc. 17, Traverse. The Court notes that the state-court traverse submitted as an attachment by Brown to his federal habeas traverse (the copy of which is neither file-stamped by the state court nor dated and signed), Rec. Doc. 17-2, State District Court Traverse to the State's Opposition to PCR, does <u>not</u> match the traverse filed by Brown contained in the state-court record, State Rec., Vol. 8 of 20, R.p. 1848.

[25]    Rec. Doc. 17-1, p. 37.

He has not done so.    Nor is this court on federal habeas review at liberty simply to disagree with the application of the state procedural bar or to correct state court errors.    *Faciane v. Kent*, No. 20-809, 2020 WL 6489577, at *7 n. 45.    Here, the state courts determined that the claim could have been, but was not, asserted on direct appeal, in contravention of an adequate and independent state procedural rule, article 930.4 (C), for asserting a claim on state post-conviction review.

A federal habeas petitioner may be afforded federal review of a procedurally defaulted claim only if he demonstrates "cause" for his default and "prejudice attributed thereto," or that the federal court's failure to review the defaulted claim will result in a "fundamental miscarriage of justice."    *Glover*, 128 F.3d at 902 (citing *Coleman*, 501 U.S. at 731–32); *Amos v. Scott*, 61 F.3d 333, 338–39 (citing *Harris v. Reed*, 489 U.S. 255, 262 (1989) and *Engle v. Isaac*, 456 U.S. 107, 129, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982)).    Brown has demonstrated neither.

To establish cause for a procedural default, a petitioner must demonstrate that some objective factor external to the defense impeded his efforts to comply with the state's procedural rule.    *Maples v. Thomas*, 565 U.S. 266, 280 (2012); *Murray v. Carrier*, 477 U.S. 478, 488 (1986).    The mere fact that a petitioner or his counsel failed to recognize the factual or legal basis for a claim, or failed to raise the claim despite recognizing it, does not constitute cause for a procedural default.    *Murray*, 477 U.S. at 486.    Brown has not demonstrated cause for the default.    The Court's review of the record does not support a finding that any factor external to the defense prevented him from raising the claim in a

procedurally proper manner or that any action or inaction on the part of the State prevented him from doing so.   "If a petitioner fails to demonstrate cause, the court need not consider whether there is actual prejudice."   *Matchett v. Dretke*, 380 F.3d 844, 849 (5th Cir. 2004) (citing *Rodriguez v. Johnson*, 104 F.3d 694, 697 (5th Cir. 1997)).

Having failed to satisfy the "cause and prejudice" test, Brown must show that applying the procedural bar would result in a fundamental miscarriage of justice.   A petitioner makes such a showing only if he establishes as a factual matter that he is "actually innocent" of the crime of conviction.   *McGowen v. Thaler*, 675 F.3d 482, 499 (5th Cir.), *cert. denied*, 133 S.Ct. 647, 648 (2012) (citing *Finley v. Johnson*, 243 F.3d 215, 220 (5th Cir. 2001) and *Fairman v. Anderson*, 188 F.3d 635, 644 (5th Cir. 1999)).   When the petitioner has not adequately asserted his actual innocence, the procedural default cannot be excused under the "fundamental miscarriage of justice" exception.   *Glover*, 128 F.3d at 903.

Brown has offered nothing to demonstrate his actual innocence.   He challenges the trial process, including trial counsel's performance and the State's use of certain evidence to prove his intent to distribute, not his factual innocence.   He has not shown that any miscarriage of justice will result from this Court's failure to consider his defaulted claim. Accordingly, the claim is procedurally defaulted and barred from federal review.[26]

---

[26] Even if not precluded from federal habeas review, it does not appear that the trial court's brief individual questioning of jurors about a trial exhibit, as specifically requested by the state prosecutor and defense counsel, violated his right to a public trial or a fair trial. *See Weaver v. Massachusetts*, 137 S.Ct. 1899, 1910 (2017) (public-trial right is structural but subject to exceptions, and not every public-trial violation results in fundamental unfairness such as where it is not objected to at trial and preserved for direct appeal but instead raised as an ineffective-assistance-of-counsel claim); *Presley v. Georgia*, 558 U.S. 209 (2010) (per curiam) (trial court excluded the public from *voir dire* proceedings over objection); *Waller v.*

B. *Ineffective Assistance of Trial Counsel*

Brown claims that he was denied effective assistance because trial counsel (1) failed to investigate and obtain a property inventory sheet to refute the State's cell phone evidence; (2) agreed to leave the courtroom while the trial judge questioned jurors about a search warrant exhibit introduced for record purposes only; and (3) failed to request a jury instruction on "other crimes" evidence.    He raised the claims on post-conviction review and the state courts denied the claims on the merits under controlling federal law, *Strickland v. Washington*, 466 U.S. 668 (1984).

The United States Supreme Court has established a two-pronged test for evaluating claims of ineffective assistance of counsel.    Specifically, a petitioner seeking relief must demonstrate both that counsel's performance was deficient and that the deficient performance prejudiced his defense.    *Strickland v. Washington*, 466 U.S. at 697.    A petitioner bears the burden of proof on such a claim and "must demonstrate, by a preponderance of the evidence, that his counsel was ineffective."    *Jernigan v. Collins*, 980 F.2d 292, 296 (5th Cir. 1993); *see also Clark v. Johnson*, 227 F.3d 273, 284 (5th Cir. 2000). If a court finds that a petitioner has made an insufficient showing as to either of the two prongs of inquiry, *i.e.* deficient performance or actual prejudice, it may dispose of the ineffective assistance claim without addressing the other prong.    *Strickland*, 466 U.S. at

---

*Georgia*, 467 U.S. 39 (1984) (trial court closed entire suppression hearing to the public over objection); *United States v. Gagnon*, 470 U.S. 522, 526 (1985) (per curiam) (defendant's absence during an *in camera* discussion between the judge and a juror to ascertain bias did not violate the defendant's right to due process).

697.

To prevail on the deficiency prong of the *Strickland* test, a petitioner must demonstrate that counsel's conduct fails to meet the constitutional minimum guaranteed by the Sixth Amendment.    *See Styron v. Johnson*, 262 F.3d 438, 450 (5th Cir. 2001). "Counsel's performance is deficient if it falls below an objective standard of reasonableness." *Little v. Johnson*, 162 F.3d 855, 860 (5th Cir. 1998).    Analysis of counsel's performance must take into account the reasonableness of counsel's actions in light of all the circumstances. *See Strickland*, 466 U.S. at 689.    "[I]t is necessary to 'judge ... counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct.'"    *Lockhart v. Fretwell*, 506 U.S. 364, 371 (1993) (quoting *Strickland*, 466 U.S. at 690).    A petitioner must overcome a strong presumption that the conduct of his counsel falls within a wide range of reasonable representation.    *See Crockett v. McCotter*, 796 F.2d 787, 791 (5th Cir. 1986); *Mattheson v. King*, 751 F.2d 1432, 1441 (5th Cir. 1985).

To prevail on the prejudice prong of the *Strickland* test, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."    *Strickland*, 466 U.S. at 694.    In this context, a reasonable probability is "a probability sufficient to undermine confidence in the outcome." *Id.*

Because the claims were adjudicated on the merits in state court, habeas relief is available only if that adjudication resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme

Court.    28 U.S.C. § 2254(d); *Harrington v. Richter*, 562 U.S. 86 (2011).    "The standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so."    *Richter*, 562 U.S. at 105 (citations omitted).    The Supreme Court has stressed, in no uncertain terms, that "a federal court may grant relief only if *every* " 'fairminded juris[t]' " would agree that *every* reasonable lawyer would have made a different decision.    *Dunn v. Reeves*, 141 S.Ct. 2405, 2411 (2021) (citing *Richter*, 562 U.S. at 101, 131 S.Ct. 770).

First, Brown claims that trial counsel failed to investigate and prepare for trial by obtaining a prison property receipt, which did not list a fourth cellular phone, a white AT&T Galaxy S4, from which the State obtained incriminating evidence to use against him.    In support, he makes several unsupported factual allegations, including that "he informed Mr. Ehle on the day that he hired him, that the S-4 Galaxy cell phone that the state intended to use, was not one of the three phones that he had in his possession when he was arrested… and to go to the Kenner City Police Department to get the prisoner property receipt sheet that he signed upon his arrest that would show exactly what he had on him when he was arrested."[27]    Brown claims that counsel admitted he did not obtain the property sheet and did not know what images the State had obtained from that cell phone to use against him at trial.    Counsel also allegedly told Brown, "he did not have the time and he would try to get a continuance but the judge probably would not give him one."[28]    Brown argues that he was

---

[27]    Rec. Doc. 3-1, p. 8.

[28]    *Id.*

prejudiced in that "had the jury known about the phone not being petitioner's the state's entire case would have been destroyed, because without the images from the phone there is no proof prior drug sells... [and] [w]ith no evidence of prior drug sells petitioner would have only been guilty of possession of those drugs."[29]   Simply put, he alleges counsel could have proven the cell phone did not belong to Brown and refuted the State's incriminating evidence, had he only obtained the prison inventory sheet that did not list that particular cell phone as his personal property.

Most of the trial preparation was done by Brown's first counsel of record, Robert Hjortsberg.[30]   Just before trial, Brown terminated Hjortsberg and new counsel of record, Davidson Ehle, enrolled at Brown's request.   The motion to enroll was signed on August 31, 2015.[31]   The next day, on the morning of trial, Ehle filed a motion to continue trial. That motion was based solely on Brown's admitted and obvious impairment in court the day before, and his candid confession that a drug screen, if done, would prove positive.[32]   The trial court denied the continuance because Brown had been remanded to prison for 24 hours before trial and he was no longer under the influence of drugs.[33]

---

[29]   Rec. Doc. 3-1, p. 12.

[30]   State Rec., Vol. 1 of 20, Motion to Enroll (Hjortsberg), R.p. 39.

[31]   State Rec., Vol. 1 of 20, Motion to Enroll (Ehle), R.p. 52.

[32]   State Rec., Vol. 1 of 20, Motion to Continue, R.p. 56.

[33]   State Rec., Vol. 1 of 20, Trial Transcript, R.pp. 123-24 (the State superimposed sequential record page-numbering over the trial transcript page numbers so the report and recommendation will refer to their page numbers located on the bottom right corner of each

The morning of trial, the trial court considered the State's 404(B) motion and the defense's motion to suppress.    Defense counsel skillfully argued in opposition to the State's 404(B) motion (notice of intent filed August 28, 2015) and re-urged and argued a motion to suppress the cell phone evidence, but the objection was overruled and the motion to suppress was denied. [34]    Videos from the phone allegedly depicting Brown packaging heroin for distribution and large amounts of money as well as texts pertaining to illegal narcotics transactions were shown to the jury at trial.

The record shows that beyond challenging the State's evidence the morning of trial, counsel also effectively and thoroughly prepared for the examination of Detective Schlueter concerning the cell phone evidence.    Ehle moved for a mistrial, which was denied, but he successfully objected to any opinion testimony being elicited from Detective Schlueter about what the videos and pictures depicted.[35]

*Strickland* sets forth the following standard for ineffective assistance claims regarding investigation:

> [C]ounsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments.

*Strickland*, 466 U.S. at 691.    The record objectively supports the state court's determination

---

page of the state court record when referencing the trial transcript).

[34]  State Rec., Vol. 1 of 20, Trial Transcript, R.pp. 128-145.

[35]  State Rec., Vol. 1 of 20, Trial Transcript, R.pp. 218-221, 226-231.

that counsel's preparation and investigation in this case was sufficient.    Brown claims otherwise, but offers internally conflicting, self-serving allegations to support his argument. The state court record itself contradicts his contention that counsel knew about, but disregarded, the property receipt.

Brown's allegations about counsel's deficient performance are both inconsistent and flawed.    With his federal application, Brown submitted his own two-page unnotarized affidavit signed and dated October 28, 2019.[36]    The second page of the affidavit attests to his purported conversation with defense counsel, Ehle, regarding the property receipt and cell phone, Ehle's admission that he did not follow up before trial, and his purported lack of knowledge about the evidence the State intended to introduce.    Besides being entirely self-serving, the affidavit attached to his federal application is not the same one he filed in the state courts.    The affidavit contained in the state court record is a one-page notarized affidavit, signed and dated October 22, 2019.[37]    There is no mention in that affidavit of Brown and Ehle ever talking about the property receipt.    In the record affidavit, Brown attests simply that he told Ehle when he hired him that the State had filed a 404(B) motion to introduce evidence from a cell phone he was not arrested with, and that he had only three phones in his possession.    Ehle's motion for new trial also contradicts Brown's newly attested incredible information.    The motion itself was styled, "Motion for New Trial based

---

[36]    Rec. Doc. 3-3, Brown affidavit.

[37]    State Rec., Vol. 6 of 20, R.p. 1322, Brown Record Affidavit attached to PCR as Exhibit B.

upon Newly Discovered Evidence," and the newly discovered evidence was a Kenner Police Department Prisoner Property Receipt that counsel indicated he did not discover until after the trial.[38]    Brown himself filed an amendment to the new trial motion and characterized the evidence as newly discovered, stating that the property receipt was not discovered until three days after trial.[39]    On the record evidence, it does not appear that counsel knew about the property receipt, which was not provided to him as part of pretrial discovery.    Under the circumstances, he was not obliged to investigate further to locate the property receipt.

Furthermore, even if Brown could establish that counsel knew or should have known about the property receipt, he has not shown that the receipt, even if admissible at trial, in any way tends to disprove that he possessed the phone, which was subjected to search and seizure, and produced admissible evidence to be accorded whatever weight the jury in its discretion felt was proper.    A decision not to investigate further under the circumstances would have been objectively reasonable; regardless, however, the omission did not affect the outcome in this case.

The property receipt is not an exhaustive inventory of every single item Brown had in his possession that day.    In fact, the jury heard testimony from Officer Alvarenga and Detective Schlueter about evidence that was not identified on his "prisoner property receipt," such as the folded thousand dollars in cash, baggies containing cocaine, heroin,

---

[38]    State Rec., Vol. 1 of 20, R.p. 81, Motion for New Trial based on Newly Discovered Evidence filed September 17, 2015.

[39]    State Rec., Vol. 1 of 20, R.p. 93, Amendment/Supplemental to Motion for New Trial filed October 29, 2015.

marijuana, and the one cell phone that was constantly receiving messages.[40]   Detective Schlueter explained during his testimony that Brown was in possession of four cell phones but the one phone constantly receiving messages and texts was seized as evidence; it was the only one subject to the search warrant, as opposed to the other three phones that were not on at the time and evidently initially listed as property (but later marked confiscated).[41] Detective Schlueter testified that he placed the items of evidence in a secure evidence safe that he alone could access.[42]   The testimony contradicts Brown's allegation that the cell phone cannot be linked to him merely because it was not listed and inventoried as his personal property on the prison property sheet.

The record shows that trial counsel prepared adequately and knew what cell phone evidence the State planned to use at trial.[43]   The record reflects that the defense was provided adequate discovery, argued a motion to suppress evidence, and defended the State's 404(B) notice on the morning of trial.   During trial, counsel effectively disputed the State's cell phone evidence without the useless personal property receipt.   He thoroughly cross-examined Detective Schlueter and successfully objected when the prosecution tried to elicit testimony about what Detective Schlueter believed was happening in the videos,

---

[40]   State Rec., Vol. 1 of 20, Trial Transcript, R.pp. 173-74; 209-10.

[41]   State Rec., Vol. 1 of 20, Motion for New Trial with attached prisoner property receipt, R.p. 83.   See also Rec. Doc. 3-4, p. 2 (copy of prisoner property receipt).

[42]   State Rec., Vol. 1 of 20, Trial Transcript, R.pp. 214-15, 231-32.

[43]   State Rec., Vol. 1 of 20, Discovery Receipt Acknowledgement by Defense, R.p. 51 (CD of phone download).

leaving it to jurors to interpret what they were seeing for themselves.    Thus, under the circumstances, as the state courts reasonably determined, Brown has not shown that counsel rendered ineffective assistance by failing to discharge his duty to make reasonable investigation as set out under *Strickland*.    Nor has he shown a reasonable probability that, but for counsel's failure to investigate and obtain Brown's prisoner property sheet before trial, the result of the proceeding would have been different.    This claim does not warrant relief.

Second, Brown claims that counsel was constitutionally ineffective for not remaining in the courtroom while the trial judge interviewed each juror about the search warrant evidence intended only to be introduced for record purposes, but then briefly and inadvertently disseminated.    He argues that counsel could have "ask[ed] the jurors were they made aware of his prior conviction that was displayed on the search warrant."    He contends "this is a question that was not asked by the judge and should have been asked."[44] Brown alleges that counsel's omission prejudiced his ability to have a fair trial with an impartial jury.

The alleged omission took place near the end of trial.    At the end of the State's case, the State asked to publish the evidence to the jury.[45]    The deputy was handed the evidence, which included the search warrant that was admitted "for record purposes only," and not for

---

[44]  Rec. Doc. 3-1, p. 14.

[45]  *See* generally, State Rec., Vol. 2 of 20, R.pp. 251-276 (entire exchange regarding search warrant and questioning of jurors).

publication.    By the time the State prosecutor realized what the jurors were viewing and brought it to the court's attention, the warrant had been seen by the alternate juror and ten jurors.    The trial court reviewed the search warrant document and was concerned that Brown's prior conviction for illegal narcotics was mentioned at the very bottom of the first page, and, this information, of course, had not been mentioned during the trial testimony. The State suggested an "*in camera*" review of each juror to see if anyone reviewed the entire page in question, as opposed to simply glancing over it, before passing the document. Defense counsel agreed that asking the general question "did you read the entirety of page one" would not draw unnecessary attention to the prior conviction referenced in the affidavit.    Defense counsel and the state prosecutor indicated they were comfortable with the trial judge questioning the jurors with only a court reporter present.    Defense counsel agreed with the prosecutor's suggestion to vacate the courtroom and to put it on the record. Defense counsel volunteered that he would ask Brown's family members and friends to remove themselves from the courtroom rather than the judge doing the questioning in chambers.    The trial judge interviewed jurors individually, with only the court reporter present, and a record was made of the exchange.    Not a single juror saw the reference to the prior offense.    The trial court concluded on the record:

> Not one person mentioned anything about reviewing or seeing anything about a prior conviction for Cody Brown. Not one of them read this document in its entirety. Most of them said they looked at it, saw it was a search warrant, and just kind of scanned through the five pages. So I don't believe in my estimation in my conversations with all 13 jurors that anyone read this and saw the one phrase that has us all concerned.[46]

---

[46]   State Rec., Vol. 2 of 20, R.p. 276.

Defense counsel and the prosecution indicated on the record that they were satisfied with the court's recitation.

Brown argues that counsel performed deficiently because he was not present when the trial judge conducted the juror questioning about the search warrant.     The state courts found otherwise.     The targeted question-and-answer session with individual jurors had one purpose, to learn if any juror had read the prior-conviction reference in the search warrant exhibit.     Defense counsel and the prosecutor, along with the trial judge, agreed in advance in the courtroom on how questioning would be handled, taking into consideration how to minimize drawing attention to the prior conviction reference, and determined that the trial judge alone would question each individual juror, outside the presence of spectators, and that counsel had no reason to be present for it.     The entire interview process was brief and recorded by the court reporter.     The attorneys were present for the discussion with the trial court immediately after juror questioning and agreed with the trial court's conclusions and recitations that no juror had read the reference to the prior conviction. The way defense counsel chose to resolve any potential prejudice to his client was reasonable under the circumstances and handled appropriately, as the state courts determined.     As previously set forth, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689.

Even if counsel had insisted on staying in the courtroom, his role would have been merely to listen and observe the responses by jurors, not to actively question jurors, and

certainly not to ask them pointedly, as Brown suggests, if they were "made aware of his prior

conviction" referenced in the search warrant.    Defense counsel made it clear to the trial

court before questioning that he wanted <u>no</u> attention drawn to anything in the search

warrant, and in particular, the reference to a prior conviction.[47]    He preferred jurors were

asked only generally if they read the whole page.    The record shows that the trial court

followed counsel's directives.    The state court reasonably determined there was no

deficient performance by counsel in choosing to have the jurors questioned individually by

the trial court to resolve if anyone saw the reference to Brown's prior conviction.    And

given the outcome of the interviews, which defense counsel had no reason to doubt given the

trial court's accurate analysis and summation, there were no grounds for counsel to move

for a mistrial.    Counsel is not ineffective for failing to make a meritless motion for a mistrial.

*McKee v. Cain*, No. 10-344, 2010 WL 4366041, at *9 (E.D. La. Sept. 30, 2010), *adopted*, 2010

WL 4362769 (E.D. La. Oct. 25, 2010); *Fields v. Cain*, No. 05-0074, 2007 WL 458208, at *4 and

17 (E.D. La. Feb. 8, 2007).    Thus, even assuming for the sake of argument that his decision

to leave the courtroom during juror questioning could be considered error, Brown cannot

show that but for that error the result would have been different.[48]    This claim does not

---

[47]  State Rec., Vol. 2 of 20, R.p. 255.

[48]  While Brown suggests that the *in camera* interview with jurors constituted a
critical stage of the proceedings during which counsel was absent, thus arguably warranting
a presumption of prejudice, he cites no controlling case law from the United States Supreme
Court for this proposition.    Because no Supreme Court case confronts "the specific question
presented," the state court's decision applying *Strickland* could not be "contrary to" any
holding from the United States Supreme Court.    *Woods v. Donald*, 575 U.S. 312, 317 (2015)
(quoting *Lopez v. Smith*, 574 U.S. 1, 7, 135 S.Ct. 1, 4, 190 L.Ed.2d 1 (2014) (per curiam)).
Nor was it an unreasonable application of Supreme Court precedent.    *Id.* at 318.    Brown

warrant federal habeas relief.

Third, Brown claims that counsel was ineffective for failing to request a specific limiting instruction to the jury on "other crimes" evidence.    He points out that the record contains neither a general nor specific instruction regarding "other crimes" evidence.[49]    He alleges that he was prejudiced because the State was relieved of proving him guilty beyond a reasonable doubt considering the jury could have mistakenly relied on that "other crimes" evidence, images from the phone he denied possessing, to find him guilty of the instant criminal offenses.

In analyzing this claim, the state court of appeal considered the vague "other crimes" evidence and the unique defense or "trial strategy" relied on by counsel.    The evidence itself consisted of videos obtained from one of four cell phones depicting an individual, a large amount of money, and the weighing and packaging of a brown substance.    In addition to highlighting the State's inability to prove the cell phone belonged to Brown, the defense strenuously and perhaps effectively discredited the cell phone videos and images by successfully objecting when the State tried to have Detective Schlueter identify Brown in the images or explain to the jury what he believed the substance was in the video.    He requested a mistrial, which was denied, but successfully objected to the opinion testimony. The trial court sustained defense counsel's objections that the video (and images) speaks for

---

does not cite to *Cronic* or argue for its application in this case, and the state court decision under *Strickland* was proper.

[49]    State Rec., Vol. 1 of 20, R.p. 59, Jury Charges.

itself.[50]

Here, the defense did not concede that the "other crimes" evidence depicted Brown or another crime.    In fact, the defense wanted the jury to disregard that evidence entirely rather than consider it as evidence of another crime by Brown.    Given the speculative nature of the "other crimes" evidence at issue, defense counsel reasonably may have decided against a special limiting instruction on the use of "other crimes" evidence.    Given the twice deferential review afforded to state-court determinations on claims of ineffective assistance, the finding that counsel did not perform deficiently in not requesting the instruction was reasonable.

Even if counsel's failure to request a specific limiting instruction in this instance could be considered deficient performance, Brown's claim fails on the prejudice prong of the *Strickland* analysis.    "To establish prejudice, a defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.    In assessing prejudice, courts must consider the totality of the evidence before the judge or jury."    *Berghuis v. Thompkins*, 560 U.S. 370, 389 (2010) (citation omitted); *accord Thomas v. Vannoy*, 651 F. App'x 298, 301 (5th Cir. 2016) (noting that the prejudice "inquiry necessarily examines the strength of the other evidence in the case weighed against the egregiousness of counsel's error").    Accordingly, if "it was not reasonably likely that the instruction would have made any difference in light of all the other evidence of guilt," then there is no basis for finding that *Strickland* prejudice resulted

---

[50]  State Rec., Vol. 1 of 20, Trial Transcript, R.pp. 218-19, 220-21, 226-31.

from counsel's failure to request the limiting instruction.   *Thompkins*, 560 U.S. at 390.   In this case, considering the totality and strength of the evidence separate and apart from the "other crimes" evidence, the state-court determination under *Strickland* was proper.   As correctly summarized by the State in its response, the record evidence in this case showed that Brown possessed substances that tested positive for heroin (equal to 62 dosage units and a street value of $1,200.00) and cocaine (11.2 grams with a similar street value), in an amount far exceeding that for personal usage; Mannitol, commonly used as a cutting agent; a large amount of cash; and four different cell phones, commonly used by narcotics dealers to evade tracking by authorities.[51]   Therefore, the state court reasonably determined that counsel's failure to request a specific limiting instruction on "other crimes" evidence did not prejudice Brown.

In summary, Brown has not shown that the state-court decision rejecting his ineffective assistance of counsel claim was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States.   Accordingly, under the AEDPA's doubly deferential standards of review applicable to such claims, this Court should likewise deny relief.

## **RECOMMENDATION**

For the foregoing reasons, it is **RECOMMENDED** that Cody Brown's application for federal habeas corpus relief be **DISMISSED WITH PREJUDICE**.

---

[51]   State Rec., Vol. 1 of 20, Trial Transcript, R.pp. 152-53, 161 (Detective Kevin Treigle), 170-74 (Officer Francisco Alvarenga), 208-09, 212-14 (Detective David Schlueter).

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. 28 U.S.C. § 636(b)(1); *Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).[52]

New Orleans, Louisiana, this __14th__ day of _____March_____, 2022.

_____
**MICHAEL B. NORTH**
**UNITED STATES MAGISTRATE JUDGE**

---

[52] *Douglass* referenced the previously applicable 10-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend that period to 14 days.